# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

TAMMY SANFORD,
MARK SANFORD,

    *Plaintiffs,*                        CASE NO. 12-CV-11526

*v.*                                            DISTRICT JUDGE THOMAS L. LUDINGTON
                                                 MAGISTRATE JUDGE CHARLES BINDER

PORTFOLIO RECOVERY
ASSOCIATES, LLC,

    *Defendant.*
_____/

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT
(Docs. 37, 38)

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's motion for summary judgment (Doc. 38) be **GRANTED** and that Plaintiffs' motion for summary judgment (Doc. 37) be **DENIED**.

## II.    REPORT

### A.    Introduction

This action was filed on April 4, 2012. (Doc 1.) The First Amended Complaint centers around Defendant Portfolio Recovery Associates, L.L.C.'s ("PRA") attempt to collect a debt originally owed to J.C. Penney, for which Plaintiff last made payment in 1998. (Doc. 32 at 2.) The complaint alleges the following claims: (1) violation of the Fair Debt Collections Practices Act

("FDCPA"), 15 U.S.C. § 1692a(6); (2) violation of the Michigan Occupational Code ("MOC"), Mich. Comp. Laws § 339.901(b); and (3) violation of the Michigan Collection Practices Act ("MCPA"), Mich. Comp. Laws § 445.252. (Doc. 32 at 2-5.) The case was referred by United States District Judge Thomas L. Ludington to the undersigned magistrate judge for general case management on April 10, 2012. (Doc. 4.)

At a status conference held on January 9, 2013, the Court set dispositive motion deadlines and indicated that it would issue its Report and Recommendation ("R&R") on the motion papers unless the parties requested oral argument on the face of their motions. (Doc. 36.) On February 15, 2013, Plaintiffs filed a motion for summary judgment. (Doc. 37.) PRA responded to that motion on March 15, 2013 (Doc. 41), and Plaintiffs replied on March 29, 2013. (Doc. 45.) On February 25, 2013, Defendant PRA filed a motion for summary judgment. (Doc. 38.) Plaintiffs responded on March 15, 2013 (Doc. 40), and PRA replied on March 29, 2013. (Doc. 44.) Neither party requested oral argument. Therefore, the motions are ready for Report and Recommendation.

### B.   Factual Background

#### 1.   Plaintiff's First Amended Complaint

Plaintiffs' First Amended Complaint alleges that Defendant PRA has made attempts to collect a debt originally owed to J.C. Penney, for which Plaintiffs last made payment in 1998. (Doc. 32 at 2.) Plaintiffs allege that the "[d]ebt is outside Michigan's Statute of Limitations." (*Id.*) Plaintiffs aver that PRA first contacted Plaintiff Tammy Sanford ("Tammy") in an attempt to collect this debt in July 2011. (*Id.*) Plaintiffs next aver that on January 11, 2012, PRA called Plaintiffs at 3:55 p.m. (they did not answer) and at 7:17 p.m. At 7:17 p.m., Plaintiff Mark Sanford

("Mark") spoke with PRA and informed PRA that Tammy was not home. Plaintiff alleges that PRA then spoke with Mark about the debt and attempted to collect the debt from him. (*Id.*)

On March 9, 2012, Plaintiffs aver that PRA representative Ben Ray ("Ray") called and spoke with Mark. (*Id.*) Mark told Ray that "he was not allowed to go after Tammy for the money because it has been over 18 years since they paid on the alleged debt and that they wanted the phone calls to stop." (*Id.*) Plaintiff avers that Ray stated, "We are allowed to go after you until you get this bill paid in full." (Doc. 32 at 3.) Mark told Ray that "Michigan law states that they cannot continue with this after 6 years," but Ray responded, "We can do it until we decide to stop." (*Id.*) Plaintiffs further aver that they have never received anything in writing from PRA. (*Id.*) Finally, Plaintiffs aver that PRA "hired an independent, off-shore, contractor to collect the debt" and that the "off-shore contractor falsely identified itself as Defendant, and failed to properly identify itself, when contacting Plaintiffs while attempting to collect the alleged debt" on January 11, 2012. (*Id.*)

### 2. Telephonic Communications

As evidenced by the recorded and transcribed phone calls, the January 11, 2012, telephone conversation consisted of the following exchange:

**PRA**: Hello?

**Mark Sanford**: Hello?

**PRA**: Can I talk to Tammy?

**Mark Sanford**: She's not available can I get a message please.

**PRA**: Are you the husband?

**Mark Sanford**: Yes I am.

**PRA**: Mr. Sanford, right?

>**Mark Sanford**: That would be me.
>
>**PRA**: Ok. Mr. Sanford, this is Mona. I'm calling from Portfolio Recovery Associates regarding her account with JC Penney. This is an attempt to collect a debt by a debt collector and any information obtained will be used for that purpose. Our calls may be monitored or recorded . . .
>
>**Mark Sanford**: You know what? That's just great cuz this debt was back in 1989 which means that you guys are falsifying records. Now we've already got an attorney, I am recording this just to let you know. So I'd appreciate it if you folks would just quit calling us and our attorneys will be in touch. Because what you're doing is against the law. Thank you so much.

(Doc. 38 at 13-14.)

On January 19, 2012, Plaintiff Mark Sanford called PRA and the following exchange took place:

>**PRA**: Looks like we've had the account since May 24, 2007.
>
>**Mark Sanford**: Ok.  So they didn't even bother to file for another 9 years?
>
>**PRA**: Well actually I don't know – I don't know what happened you know, in between the time that we had it and JC Penney's had it because we're a third party collection agency. But my company, we have spoke to your wife and your wife told us in July that she was going to mail us a check.
>
>**Mark Sanford**: In July of what year?
>
>**PRA**: July of 2011. July 1 of 2011 at 10:29.
>
>**Mark Sanford**: Well, I, I doubt you spoke to my wife for some reason - my wife - for some reason - we weren't even aware of that.[1]
>
>. . .[2]
>
>**PRA**: It says spouse just got back to work from being off for 3 months. This is what your wife told us. And married - said that she would send a check off in the next 7 to 10 business days for the balance.

---

[1] Other recordings show that PRA actually spoke with Mark Sanford and that he indicated he was willing to pay the $106.00. (Doc. 38 at 13.)

[2] During the omitted portion of the recording, Plaintiff informed PRA that he had requested paperwork but had not received any.

4

**Mark Sanford**: Ok. Um, I'll have to talk to her about that. I don't recall that conversation at all but isn't there a statute of limitations of 6 years on an account?

**PRA**: There's a statute of limitations and it's just for the amount of time we're legally able to report on your credit report. That's actually why they were giving you a call. Because at this point in time because it is tax season - I'll be very honest with you - they've worked with our monthly percentages and because it is tax season, they'd be willing to clear the account for 50% of what is owed. Which would put the balance at $53.04. So if you guys set up a check by phone at $53.04, you know, we don't want to call you guys. You guys don't enjoy us calling you. I mean nobody does, you know. We are debt collectors, but, for $53.04 we'll call it good and move it out. I mean for $106 in an account that's old we -

**Mark Sanford**: Yeah, I just don't understand it. But could you guys file a lawsuit against us because of this?

**PRA**: No. It's $106.00. It's going to cost us more, you know. No. it's $106.00. That's why I'm saying for $53.04 we are going to leave you alone and you know, you're going to sleep better.

**Mark Sanford**: Ok. Well and what is your name ma'am?

**PRA**: Brenda.

**Mark Sanford**: Brenda. Ok. Well, let me speak to her and find out what's going on and all that because I don't even - you know - if you're looking for Scott [] too - I mean, that's

**PRA**: No, no, no. That's on a different matter and that's what I was getting ready to tell you too. I'll go ahead and get that number removed so that way we're not calling you. It's not a joint account. She's the only person on this account and it's under Tammy Sanford.

**Mark Sanford**: Ok.

**PRA**: But yeah, this isn't - his dealing is totally different than this. It just pulled up when you called in it's pulled up off your incoming number and the phone number was connected for both Tammy and Scott.

**Mark Sanford**: Ok.  Well you can definitely remove him.

**PRA**: Yeah, I will.

5

> **Mark Sanford**: Ok.
>
> **PRA**: But
>
> **Mark Sanford**: Well, I will get back with you.
>
> **PRA**: Ok.  Then I will.
>
> **Mark Sanford**: Alright, thank you so much.
>
> **PRA**: Thank you. Bye bye.
>
> **Mark Sanford**: Bye bye.

(Doc. 38 at 14-15.)

As conceded by Plaintiffs, during the telephone call made on March 11, 2012, PRA's agent, Mr. Ray, did not make the statements alleged in the amended complaint, i.e., that PRA could go after Plaintiffs until they were paid in full or until they decide to stop. (Doc. 32 at 3; Doc. 40 at 21.)[3] Instead, as evidenced by the recordings of the phone calls and the attendant transcripts of those recorded calls, the relevant portion of the exchange proceeded as follows:

> **PRA**:  Yes. I was calling with Portfolio Recovery Associates just trying to follow up on a business matter.
>
> **Mark Sanford**: Ok. Um, I'm pretty sure you've been contacted by our attorneys already. Um, now which bill is this your calling for?
>
> **PRA**: Um, Ok. Is this Mr. Sanford, her husband?
>
> **Mark Sanford**: Yes it is.  This is her husband.
>
> **PRA**: Ok.  By law I just got advise [sic] you real quick your calls may be monitored or recorded for quality assurance this is...
>
> **Mark Sanford**: That's that's that's fine cuz you're being recorded right now anyways, so...

---

[3]Although Plaintiff's amended complaint avers a March 9, 2013, date, the recordings evidence that the call was actually placed on March 11, 2013.

6

**PRA**: This is an attempt to collect a debt by a debt collector and any information obtained will be for that purpose. Now, I was calling reference to a J C Penney's account.

**Mark Sanford**: From 1989.

**PRA**: Um, actually it was opened 1986. And it was paid on to 1998.

**Mark Sanford**: Ok. Well let's see in 98 and the state law says that after 6 years . . . Uh you're not supposed to be calling anymore.

**PRA**: That's not true sir.

**Mark Sanford**: Well, you know what, after 6 years the bill is already been washed by state law.

**PRA**: I'll just put it as a refusal to pay.

**Mark Sanford**: I'm not giving you folks anything. I've got your name.

**PRA**: Yes sir.

**Mark Sanford**: You heard me state that you know it has been 6, over 6 years and you're telling me that you're still allowed to do this.

**PRA**: Yes sir.

**Mark Sanford**: And like I said, you're being recorded also. I'm shipping this to the attorney.

**PRA**: That's fine.

**Mark Sanford**: They are called Nitzin & Associates. Um, I will make sure that they are aware of this tomorrow.

**PRA**: Ok.

**Mark Sanford**: And give them your number and name and then you guys can deal with this and take me off your calling list once you talk to the attorneys.

**PRA**: Ok. You would have to put that in writing and what's their information.

**Mark Sanford**: Well the attorneys will take care of that so . . .

**PRA**: Ok. Ok, what's their information sir?

**Mark Sanford**: It's Nitzkin & Associates.

**PRA**: And do you have number for them?

**Mark Sanford**: Um, I don't have it right now but I'll guarantee you they'll be getting a hold of you tomorrow.

**PRA**: Ok.

**Mark Sanford**: This is like the 5th call but I've told you folks about. I, you either gotten stuff emailed, letters or phone calls from them and you guys are persisting in this matter and that's not a good thing.

**PRA**: That's, that's the reason why we haven't um, stop contacting you because we haven't heard from them.

**Mark Sanford**: Ok. Well then I'll make a point of it to make sure they get a hold of you.

**PRA**: Yes sir.

**Mark Sanford**: Alright. Thank you.

**PRA**: Ok.

(Doc. 38 at 15-17.)

    **C.**    **Motion Standards**

A motion for summary judgment will be granted under Rule 56(c) where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party

has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**D.     Analysis & Conclusions**

9

1. **FDCPA**

Plaintiffs aver a violation of the FDCPA, 15 U.S.C. § 1692a(6), based on Defendant PRA's attempt to collect a debt against Plaintiffs. The FDCPA provides that

> "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another . . . which was not in default at the time it was obtained by such person.

15 U.S.C. § 1692a(6). The parties do not dispute that Defendant PRA meets the standard for being a debt collector under the Act. Plaintiffs contend that PRA violated 15 U.S.C. § 1692c, 1692d(6) and § 1692e(2)(A). (Doc. 40 at 11-17.)

   a. **Section 1692c Claim**

Under § 1692c(a) of the FDCPA, "[w]ithout prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt . . . (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer . . . ." Plaintiffs contend that, "in light of the parties' January 11th telephone conversation[,]" when PRA "contacted Plaintiff's [sic] regarding the alleged debt on March 11, 2012, [it was] in blatant violation of § 1692c(a)(2)." (Doc. 40 at 13-14.)

The only portion of the January 11, 2012, conversation regarding an attorney is at the end of the conversation where Mark Sanford states, "Now we've already got an attorney, I am recording this just to let you know. So I'd appreciate it if you folks would just quit calling us and

10

our attorneys will be in touch. Because what you're doing is against the law." (Doc. 38 at 14.) Although it is arguable that Mark Sanford's statements inform PRA that he has an attorney, PRA was not given and thus had no "knowledge of" nor could PRA "readily ascertain, such attorney's name and address." 15 U.S.C. § 1692c(a)(2). PRA was not given enough information to "ascertain" Plaintiffs' attorney's name and address until the March 11, 2012, conversation occurred, at which time PRA was informed by Mark Sanford that the attorneys referenced were from Nitzkin & Associates. (Doc. 38 at 17.) Plaintiffs do not allege that any calls were made after March 11, 2012, nor is there any evidence that any calls were made after March 11, 2012. Since the evidence is one-sided and fails to support the allegation that PRA called after having been given enough information to ascertain the attorney referenced, I suggest that PRA is entitled to summary judgment on this claim.

  **b.**   **Section 1692d(6) Claim**

Under § 1692d of the FDCPA, a debt collector "may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt . . . . [T]he following conduct is a violation of this section: . . . the placement of telephone calls without meaningful disclosure of the caller's identity." 15 U.S.C. § 1692d(6). Plaintiffs allege that this section was violated when PRA "hired an outside, offshore company named CTT to collect the alleged debt from Plaintiffs, which falsely identified itself as 'Portfolio Recovery Associates' during the January 11, 2012 conversation with Mr. Sanford[.]" (Doc. 40 at 15.)

"Section 1692d(6)'s meaningful disclosure requirements apply 'when the telephone calls being placed are made directly to the consumer,'" and not the consumer's spouse, since "debt collectors who speak with some other third-party 'may not make a meaningful disclosure of identity to this third-party without running afoul of the privacy-protective provisions of the

11

FDCPA.'" *Lynn v. Monarch Recovery Management, Inc.*, No. WDQ-11-2824, 2013 WL 1257815, at *11 (D. Md. Mar. 25, 2013).[4]

In the instant case, the only phone call where Plaintiffs allege this section was violated was the phone called placed on January 11, 2012. (Doc. 40 at 15.) According to Plaintiffs' allegations, and as confirmed by the recording and transcript of the recording, that phone call involved only Mr. Sanford, not the consumer, Tammy Sanford. (Doc. 40 at 15; Doc. 38 at 13.) Therefore, I suggest that PRA is entitled to summary judgment as to Plaintiffs' claim under § 1692d(6).

In addition, the plain text of the statute refers to "calls" rather than a singular call. This has been interpreted to be a purposeful plural such that courts "have found a single call insufficient." *Jordan v. ER Solutions, Inc.*, 900 F. Supp. 2d 1323, 1326 (S.D. Fla. 2012). I therefore suggest that the fact that only one call was alleged to violate § 1692d(6) provides an alternative basis to dismiss this claim. I therefore again suggest that Defendant PRA's motion for summary judgment be granted as to Plaintiffs' claim arising under § 1692d(6).

### c. Section 1692e(2)(A) Claim

Under Section 1692e(2) of the FDCPA, a debt collector is prohibited from "[t]he false representation of - - (A) the character, amount or legal status of any debt . . . [or] (5) [t]he threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692(e).

Plaintiffs allege that this section was violated when: (1) PRA falsely told "Mr. Sanford that it has spoken to his wife who promised payment" (Doc. 40 at 17-18); (2) PRA made "false, deceptive and misleading statements regarding the statute of limitations under Michigan law,

---

[4] Calls placed to the consumer's recording device are also covered by § 1692d(6). *Fry v. Berk's Credit & Collections, Inc.*, No. 3:11 CV 281, 2011 WL 6057791, at *4 (N.D. Ohio Nov. 17, 2011).

12

thereby making false representations regarding the status of the alleged debt in violation of both the general prohibition under 15 U.S.C. § 1692e and the specific prohibition under 15 U.S.C. § 1692e(2)(A), despite PRA's efforts to skirt the issue by falsely claiming that Mr. Sanford is no longer confused by Defendant's misrepresentations." (Doc. 40 at 18-19.)

I note, at the outset, that since the standard to be applied in determining whether a trade practice is deceptive within the meaning of the § 1692e is an objective test based upon the "least sophisticated consumer[,]" the presence or absence of actual confusion is not relevant. *Harvey v. Great Seneca Finan. Corp.*, 453 F.3d 324, 331 (6th Cir. 2006) (citing *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 400 (6th Cir. 1998)).

I further note that although Plaintiffs argue that PRA violated § 1692e by attempting to "collect the alleged debt from Mark Sanford" (Doc. 37 at 14), there is no evidence that Plaintiff Mark Sanford was ever told anything but that the debt was Tammy's alone based on her J. C. Penney account. Simply talking to the consumer's spouse about the debt is expressly permitted and does not violate the FDCPA. 15 U.S.C. §§ 1692c(b) and (d). In addition, although Plaintiffs allege that PRA falsely told "Mr. Sanford that it has spoken to his wife who promised payment" (Doc. 40 at 17-18), since PRA never spoke to anyone but Mark Sanford, this error could not cause even the least sophisticated consumer any confusion. I therefore suggest that these factual claims can provide no basis for relief under § 1692e.

"As courts in other jurisdictions have pointed out, '[c]ommon sense dictates that whether a debt is time-barred is directly related to the legal status of that debt.'" *Dudek v. Thomas & Thomas, L.L.C.*, 702 F. Supp. 2d 826, 833 (N.D. Ohio 2010) (citations omitted). In the instant case, there is no dispute that collection on the instant debt could not proceed successfully in state court because it is time-barred. Mich. Comp. Laws § 600.5807. (Doc. 37 at 16; Doc. 40 at 18.)  I

13

therefore suggest that the most salient issue raised by the alleged facts is whether PRA violated § 1692e(2)(A) by making a "false representation" as to the "legal status of the debt" since the debt was time-barred.

In *Harvey,* the plaintiff contended that the defendant's filing of a state-court collection action knowing that it had no documentation to prove the debt's existence constituted a deceptive debt-collection practice. *Harvey,* 453 F.3d at 326. The plaintiff attempted to argue that the defendant's conduct was "'analogous to suing on a time-barred debt, a practice uniformly held to violate the FDCPA'[because] an unsophisticated and unrepresented debtor would not challenge a time barred lawsuit on limitation grounds, . . . [so an] unsophisticated debtor would not have the knowledge or resources to realize that [the defendants] did not possess the documents to prove their claim." *Id.* at 332 (citations omitted).

The Sixth Circuit stated that "we have never addressed the issue and express no opinion on the question, [but] we note that courts in other circuits have held that the filing of a lawsuit to collect a debt that is barred by the statute of limitations violates subsections of 15 U.S.C. § 1692e[.]" *Id.* The Sixth Circuit distinguished the facts in the case before it because "a debt may be properly pursued in court, even if the debt collector does not yet possess adequate proof of its claim." *Id.* at 333. The Sixth Circuit "therefore" held that the defendants in that case "did not misrepresent the legal character of the debt owed." *Id.* The Sixth Circuit noted that to hold otherwise "would in our opinion unjustifiably extend the rationales of the 'time-barred' cases, none of which have been endorsed by this circuit." *Id.*

*Harvey* is properly cited as holding that filing a claim without sufficient written evidence of the alleged indebtedness, without more, does not amount to a deceptive act under section 1692e. *See, e.g., Deere v. Javitch, Block and Rathbone, L.L.P.*, 413 F. Supp. 2d 886, 891 (S.D. Ohio

2006); *Lipa v. Asset Acceptance, L.L.C.*, 572 F. Supp. 2d 841, 850 (E.D. Mich. 2008). Nonetheless, some courts have cited *Harvey* for the proposition that suing on a time-barred debt violates the FDCPA. *See, e.g., Duffey v. Pope*, No. 2:11-cv-16, 2012 WL 4442753, at *5 (S.D. Ohio Sept. 25, 2012); *Mansfield v. Midland Funding, L.L.C.*, No. 09cv358 L(WVG), 2011 WL 1212939, at *5 (S.D. Cal. Mar. 30, 2011).

In the instant case, however, PRA did not file a lawsuit against Plaintiffs to collect the debt. Instead, this case presents an issue with even less precedential guidance. Lower courts have generally held that "a threat to sue a consumer on a debt that is known to be time-barred is a deceptive collection practice under the FDCPA." *Canterbury v. Columbia Gas of Ohio*, No. C2-99-1212, at *6 (Sept. 25, 2001) (citing *Kimber v. Federal Fin. Corp.*, 668 F. Supp. 1480, 1489 (D. Ala. 1987)). This is so "regardless of the fact that the statute of limitations is a waivable defense" because "to hold otherwise would permit a lawyer to pursue a claim against an unsophisticated consumer on a debt that the consumer no longer has a legal obligation to pay in the hopes that the consumer's inexperience and lack of expertise will cause him or her to overlook the limitations bar and waive the right to assert it [which ] is precisely type of deceptive practice that the FDCPA was designed to prohibit." *Ehsanuddin v. Wolpoff & Abramson*, No. CIV A 06-708, 2007 WL 543052, at *3-4 (W.D. Pa. Feb. 16, 2007) (denying motion to dismiss) (citing *Kimber*, 668 F. Supp. at 1488).

On the other hand, "[b]ecause the running of the statute of limitations does not extinguish a debt, courts have generally held that absent a threat of litigation or actual litigation, there is no FDCPA violation in attempting 'to collect on a potentially time-barred debt that is otherwise valid.'" *Brewer v. Portfolio Recovery Assoc.*, 1:07CV-113-M, 2007 WL 3025077, at *2 (W.D. Ky. Oct. 15, 2007) (finding that the plaintiff failed to state an FDCPA claim where the plaintiff did not

15

allege that the defendant "explicitly or implicitly threatened him with further collection action" and where "no threat can be inferred in the debt collection letter") (quoting *Freyermouth v. Credit Bureau Services, Inc.*, 248 F.3d 767, 771 (8th Cir. 2001); and *Shorty v. Capital One Bank*, 90 F. Supp. 2d 1330, 1331-1332 (D. New. Mex. Apr. 3, 2000) (determining that "the legal status of a debt necessarily includes whether that debt is time barred" and holding that a single debt validation notice that did not threaten a lawsuit or any further collection was not deceptive)).

The issue considered in *Canterbury* is the same as in the instant case: "the only issue this court must decide is whether the representations allegedly made by [defendant] could be viewed by the least sophisticated consumer as a threat of legal action." *Canterbury*, at *6. The court in *Canterbury* held that "under the least sophisticated consumer standard, a defendant engages in a deceptive collection practice when it attempts to collect on a time-barred debt by informing the consumer that she was liable for the debt, that the creditor intended on pursuing 'available legal means including, referral of the matter to an attorney' and that if the Plaintiff missed her final opportunity to re-establish her credit, firm collection action would be taken." *Canterbury,* at *7.

I suggest that in the instant case, the alleged deception was not as strong as the examples delineated in *Canterbury, supra.* The relevant portions of the exchanges occurred on January 19, 2012, and March 11, 2012, respectively:

> **Mark Sanford**: Ok. Um, I'll have to talk to her about that. I don't recall that conversation at all but isn't there a statute of limitations of 6 years on an account?
>
> **PRA**: There's a statute of limitations and it's just for the amount of time we're legally able to report on your credit report. That's actually why they were giving you a call. Because at this point in time because it is tax season - I'll be very honest with you - they've worked with our monthly percentages and because it is tax season, they'd be willing to clear the account for 50% of what is owed. Which would put the balance at $53.04. So if you guys set up a check by phone at $53.04, you know, we don't want to call you guys. You guys don't enjoy us calling you. I mean nobody

16

does, you know. We are debt collectors, but, for $53.04 we'll call it good and move it out. I mean for $106 in an account that's old we -

**Mark Sanford**: Yeah, I just don't understand it. But could you guys file a lawsuit against us because of this?

**PRA**: No. It's $106.00. It's going to cost us more, you know. No, it's $106.00. That's why I'm saying for $53.04 we are going to leave you alone and you know, you're going to sleep better.

(Doc. 38 at 14-15.)

> **PRA**: This is an attempt to collect a debt by a debt collector and any information obtained will be for that purpose. Now, I was calling reference to a J C Penney's account.
>
> **Mark Sanford**: From 1989.
>
> **PRA**: Um, actually it was opened 1986. And it was paid on to 1998.
>
> **Mark Sanford**: Ok. Well let's see in 98 and the state law says that after 6 years . . . Uh you're not supposed to be calling anymore.
>
> **PRA**: That's not true sir.
>
> **Mark Sanford**: Well, you know what, after 6 years the bill is already been washed by state law.
>
> **PRA**: I'll just put it as a refusal to pay.
>
> **Mark Sanford**: I'm not giving you folks anything. I've got your name.
>
> **PRA**: Yes sir.
>
> **Mark Sanford**: You heard me state that you know it has been 6, over 6 years and you're telling me that you're still allowed to do this.
>
> **PRA**: Yes sir.

(Doc. 38 at 15-17.)

Although the above exchanges could be viewed as a threat to keep calling or to disturb Plaintiffs' sleep, I am unable to conclude that a reasonable factfinder could determine that the

above exchanges constitute a threat of legal action to even the least sophisticated consumer. *Canterbury*, at *6. I suggest that this result is bolstered by the fact that the least sophisticated consumer would rely on the "no" answer to his question whether PRA "could" file a lawsuit against Plaintiffs and would not focus on the rationale for the assurance that no legal action would be taken.

I do, however, find it troubling that PRA's reason for answering "no" was not based on the statute of limitations but rather the fact that a lawsuit would cost more than could be recovered and thus, would not be worth pursuing. I am also troubled that PRA would erroneously state that the statute of limitations applies only to credit report disclosures rather than the ability to collect on a time-barred debt in state court. However, since PRA ultimately stated that it would not pursue legal action, I suggest that there is an insufficient basis upon which to conclude that the least sophisticated consumer could interpret the communications as constituting a threat of legal action.

I therefore suggest that PRA's motion for summary judgment be granted as to Plaintiffs' claims under § 1692e.

**2.    State Law Claims**

I further suggest that, pursuant to *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966), this Court should decline to exercise its discretion to entertain the pendent state law claims[5] made by Plaintiff. *See id.* at 726 (noting that generally "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.") *See also Hankins v. The Gap, Inc.*, 84 F.3d 797, 802-03 (6th Cir. 1996) (when all federal claims have been

---

[5] Plaintiffs' Michigan Occupation Code claim under Mich. Comp. Laws § 339.915, and Michigan Collections Protection Act claim under Mich. Comp. Laws § 445.252(e) and (f).

18

dismissed at a pretrial stage and the parties are non-diverse, the district court should decline to exercise supplemental jurisdiction over the surviving state law claims).

### E. Conclusion

For the reasons stated above, I suggest that Defendant's motion for summary judgment should be granted. This recommendation forecloses the need to separately analyze Plaintiffs' motion and necessitates that Plaintiffs' motion for summary judgment should be denied.

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

s/ Charles E. Binder<br>CHARLES E. BINDER<br>United States Magistrate Judge

Dated: May 30, 2013

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  May 30, 2013                             By     s/Patricia T. Morris
                                                               Law Clerk to Magistrate Judge Binder